524 So.2d 968 (1988)
Mr. Marvin L. JONES, Mrs. Marvin L. Jones, and Their Daughter, Regina Jones
v.
The BOARD OF TRUSTEES OF THE Pascagoula MUNICIPAL SEPARATE SCHOOL DISTRICT.
No. 57520.
Supreme Court of Mississippi.
April 20, 1988.
*969 J. Brice Kerr, Pascagoula, for appellants.
Raymond L. Brown, Robert W. Wilkinson, Brown & Associates, Pascagoula, for appellee.
Before DAN M. LEE, P.J., and PRATHER and GRIFFIN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Regina Jones and her parents appeal Regina's expulsion from school for the spring semester of the 1985-86 school year.
On January 15, 1986, Regina Jones was suspended from William M. Colmer Junior High School of the Pascagoula Municipal Separate School District for alleged involvement with drugs on campus. She was later expelled by vote of the Board of Trustees.
Since it is not clear the Joneses were prejudiced by alleged procedural errors, and it is clear the school board had sufficient evidence to find a violation of school rules warranting expulsion, we affirm.

I.
On January 20, 1986, the Board's Disciplinary Review Committee held a hearing regarding alleged drug involvement. Several students appeared separately before the committee. At the hearing Assistant Principal Allen Curry stated that he spoke with 10 students and nine of them said Regina was distributing drugs. This appears in the recorded transcript of the disciplinary review hearing for Regina.
The committee unanimously recommended expulsion of Regina Jones "from school for the remainder of 1985-86 school year for violation of the Pascagoula Municipal Separate School District's Alcohol/Drug Policy." This recommendation was appealed by appellants to Dr. Dwight Shelton, Superintendent of the school district. Upon a review of the record the superintendent recommended to the board of trustees that Regina Jones be expelled for the remainder of the 1985-86 school year. The decision of the superintendent was appealed to the board of trustees.
On March 25, 1986, the board of trustees of the Pascagoula Municipal Separate School District held an evidentiary hearing at which Regina and her parents appeared with counsel.
Principal Kathryn Dambrino told the board she spoke with five students on January 14, 1986, and all of them said that drugs were being supplied by Regina Jones. On January 15 or 16 she said another woman and assistant principal Curry met with three other female students who admitted distributing or buying Vivarin, and all three stated they received the drug from Regina Jones. A fourth student, Brandon Erwin, told Curry he received one valium from Regina Jones at school and she offered him another one. The three female students did not appear at the board hearing; however, Erwin and two other students making allegations against Regina Jones did appear and were questioned and cross-examined.
Erwin told the board that Regina Jones gave him a pill in the school hallway, though he was not sure it was valium at the time she handed it to him. Regina told him later that day the pill was valium. Erwin's sister Tasha told the board that after "Brandon" had told her he had been discovered for having drugs, Regina walked up to her locker and said she had given "Brandon" the pill. The record is unclear, but it appears Tasha was referring to Brandon Winstead, not her brother Brandon Erwin.
Brandon Winstead told the board he received 10 valium from Regina one day when he stopped by her house after school. Sean Dixon told the board he was with Winstead the day he received the valium. *970 He said they were walking home from school at the time.
Though the three girls, Stacey Mixon, Patricia and Tammy Dean did not appear, Mrs. Dambrino stated the girls all said Regina was a drug source; however, this was after Regina had turned them in for having drugs. Regina's mother said that afterward these girls would repeatedly call Regina, during which time she would listen on the other telephone, and they would tell Regina, "we'll get you for turning us in."
Regina continued to deny any involvement with providing drugs and suggested the girls and one of the three boys had motives for wanting to get her in trouble.
Regina's mother told the board that some valium had turned up missing at home, but she believed Regina did not take it. Regina's mother also stated that her kitchen door had been left open in the afternoons before her children arrived home. Her home had been vandalized on several occasions and some change turned up missing from her kitchen, all occurring about the time of day school gets out, during the last couple of years. The Joneses' home is two to three blocks from the school.
Regina stated that other people knew the valium was at her home for her grandmother's prescription; however, when pressed, she did not know of any students who had reason to know of the valium.
There was evidence that Regina had been tested for drugs and the results were negative. Regina also supposedly requested a lie detector test, but it is not clear if this was done.
On March 25, 1986, the board of trustees unanimously voted to expel Regina Jones from school for the remainder of 1985-86 school year.
Appellants appealed the expulsion voted by the board of trustees by filing a complaint in the Chancery Court of Jackson County. The record filed for review in chancery court contained transcripts of the disciplinary review hearings of nine students other than Regina Jones.
On May 18, 1986, appellants filed with the chancery court a motion to strike from the record the transcripts of the nine students mentioned above. On May 20, 1986, the chancellor rendered an order overruling the motion to strike and affirming the decision of the board of trustees of the Pascagoula Municipal Separate School District. From that order this appeal is taken.

II.

Is This Appeal Moot?
Here the Joneses suggest this appeal is moot since Regina completed the spring 1986 semester while this appeal was pending. Obviously, the board argues that if such an event would render disciplinary proceedings moot, then very few suspensions or expulsions could be upheld. Regina's expulsion, if upheld, should have as its legal consequence the nullification of her credit for the semester in question. The potential loss of school credit should mean the case is not moot. In addition, school expulsions or suspensions are, in most instances, capable of repetition yet evading review. See Board of Trustees of Pascagoula Municipal Separate School District v. Doe, 508 So.2d 1081 (Miss. 1987). We hold this type of appeal is ripe for review.

III.

Did the Board Act Based on Substantial Evidence?
The Joneses make two separate arguments assailing the sufficiency of the evidence. The first involves evidence that Regina passed valium outside of school hours and off school property. The second involves the evidence that Regina gave Brandon Erwin a valium while at school.
Under assigned error III, the Joneses suggest that the evidence that Regina gave valium tablets to Brandon Winstead and Sean Dixon as they stood at the back door of the Joneses' house did not violate any school rule since it occurred entirely off campus and not during school hours. The boys told the board that Regina gave Winstead the pills after school.
*971 Though it is not clear in the record, there is some testimony setting out the school district's "Drug and Alcohol Possession and Use" policy. Basically, the policy applies to "any student who's on school property, who is in attendance at school or at a school sponsored activity, who is wearing a school uniform or costume on or off the school property, or whose conduct, at any time or anyplace, interferes with or obstructs the operation of the school district for the safety and welfare of students or employees."
Obviously, the Joneses maintain that giving or selling drugs off school property outside of school time to other students does not fall within the policy.
This Court in Warren County Board of Education v. Wilkinson, 500 So.2d 455, 460 (Miss. 1986), dealt with a similar claim involving an expulsion of a student who drank some beer before the last day of school. We stated:
The beer was consumed in her home. She did not have possession of it on the way to school or use it while traveling to school or on the school grounds or in the buildings. The school board has called our attention to no rule expressly or impliedly prohibiting a student from drinking beer at home  indeed, we doubt a school board would have authority to make any such rule, although the point is not before us today. It is elementary that it is a violation of due process to punish one for conduct that has not been lawfully condemned.
Wilkinson, 500 So.2d at 460.
Of course, the board's authority is limited by law. Under Miss. Code Ann. § 37-7-301(e), the board has authority
To suspend or expel a pupil for misconduct in the school, upon school buses, on the road to and from school, during recess or upon the school playgrounds...
Whether, in the light of our opinion in Wilkinson, the school board may discipline Regina based on proof that she distributed valium off campus is a close question, but a question we do not have to reach since we find sufficient evidence to support the allegation that Regina did violate the school drug policy at school.
The board had before it sufficient evidence that Regina distributed a valium tablet to Brandon Winstead during school hours in the school building. The evidence might have been conflicting, but the board had sufficient evidence to find this violation.
"Where procedural safeguards are provided, the sole function of the Court was whether there was sufficient evidence to support the charge against the student." 2 J. Rapp, Education Law § 9.05[3][6] (1984 & Supp. 1986). The Joneses suggest procedural safeguards were not afforded, and we turn to this question.

IV.

Did the Chancellor Err in Failing to Grant Appellant's Motion to Strike?
On appeal of the Board's decision to the Chancery Court of Jackson County, they sought to include in the record transcripts of hearings before the board's review committee. Included were transcripts of hearings for Stacey Mixon, Patricia and Tammy Dean. These three students stated Regina Jones distributed Vivarin tablets to them at school. The Joneses motion to strike these transcripts was overruled.
Here the Joneses assign as error the chancellor's denial of the motion to strike. The thrust of their complaint, however, is that they were denied procedural due process by not being informed of these accusations or given the opportunity to confront these students. We address first the Joneses' claim that they lacked notice.
There is no question that expulsion or suspension from school involves deprivation of a property interest protected by the Due Process clause of the Fourteenth Amendment to the United States Constitution. Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The question with which many courts have struggled since Lopez is, "what process is due?" In Lopez the U.S. Supreme Court held that for a short suspension:

*972 [T]he student [must] be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.
Id. at 581, 95 S.Ct. at 740, 42 L.Ed.2d at 739. However, the Court noted that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures," such as the right to call or confront witnesses. Id. at 584, 95 S.Ct. at 741, 42 L.Ed.2d at 740. Thus, at a minimum, the due process clause requires notice and opportunity to be heard.
In Warren County Board of Education v. Wilkinson, 500 So.2d 455, 460 (Miss. 1986), it is said:
It is almost trite to state that one has to be advised of the nature and cause of his accusation against him, and that such cause must be previously determined. Nevertheless, from time to time courts find it necessary to advise the citizenry of the existence of such constitutionally protected rights.
* * * * * *
The cases in this jurisdiction announcing the same principle are legion, and apply to school boards as well as the courts.
The Court in Wilkinson upheld a chancellor's ruling that a student was improperly expelled by lack of due process. "This is true because she was not provided the witnesses against her, though requested in writing as provided by the rule. No witnesses at all were presented nor afforded for cross-examination. She was tried and convicted for an offense that did not exist." Id. at 461-62. Thus, in Wilkinson the Court did not rest its decision exclusively on the board's failure to adequately inform the student of the charge against her, but rather looked to the board's failure to provide witnesses against the student and to the substantive failure of the proof to show a violation of school rules.
Notice given the Joneses involved charges of distributing valium only. A January 15, 1986, letter from Principal Dambrino to Mr. and Mrs. Jones informed the couple their daughter had been suspended and would be recommended for expulsion based on:
Without exception, all information (evidence) received regarding the distribution of ten (10) valium tablets implicate Regina, even though she denies having anything to do with taking the valium from the prescription in your home and distributing the valium tablets to Colmer (Junior High) students.
Thus, the notice did not include any reference to accusations that Regina had dispensed vivarin, which Patricia and Tammy Dean and Stacey Mixon all testified to before the disciplinary review committee.
There is nothing to indicate the full board considered the accusations of distributing Vivarin. Principal Dambrino made one reference to three students suggesting Regina distributed Vivarin; however, the board made no specific findings and heard no other evidence at the hearing regarding other charges.
Further, the record discloses that during the disciplinary review committee hearing, prior to the hearing before the full board, counsel for the Joneses knew nine students had mentioned Regina and, in fact, questioned Principal Dambrino or Assistant Principal Curry about their statements to the extent he was satisfied that he needed to call only three students as witnesses at the full hearing.
On this record, it just is not clear that the board considered anything other than the listed charges, or that the Joneses lacked any informal notice of the Vivarin allegations in any event. The Fifth Circuit Court of Appeals has held that to sustain a violation of procedural due process, the aggrieved party must show "substantial prejudice." Keough v. Tate County Board of Education, 748 F.2d 1077, 1083 (5th Cir.1984). We cannot find substantial prejudice in this record.
Perhaps the chancellor should not have allowed the additional disciplinary hearing transcripts to be included in the record. Our focus, however, is whether the administrative proceedings were conducted according *973 to due process requirements and whether the board acted based on sufficient evidence. We have already stated there was substantial evidence. There was no substantial deviation from the minimal procedural due process notice requirements.
Finally, the Joneses argue they should have been given a list of the witnesses and been given an opportunity to cross-examine them. Specifically, the Joneses refer to the Dean sisters, Stacey Mixon and another student  essentially the same students who the Joneses contend leveled additional charges at Regina.
The Fifth Circuit Court of Appeals has held that normally a pupil should be provided a list of witnesses along with an explanation of the charges. Keough, 748 F.2d at 1083. In Wilkinson this Court intimated that a list of witnesses was necessary; however, there the school board's own rules required that a witness list be given.
Since how much process is due depends on the particular circumstances, a denial of a list of witnesses will not always amount to a prejudicial denial of due process. Particularly, this must be so with student witnesses, since a school board has not been given the power of subpoena. Here the Joneses did obtain a list of witnesses testifying to the particular charges at the disciplinary review committee hearing. The Joneses requested these students to attend the hearing before the full board and these students did appear and were cross-examined. Further, as noted above, the Joneses were given information that other students had mentioned Regina as a drug source, but they did not seek these students' names or ask that they be present.
Likewise, the Joneses were not denied confrontation rights. The cases gathered in Annot., Admissibility of Hearsay Evidence in Student Disciplinary Proceedings, 30 ALR 4th 935-39 (1984), seem to suggest that courts will not uphold actions taken based solely upon hearsay statements of students, see De Jesus v. Penberthy, 344 F. Supp. 70 (D.Conn. 1972); Tibbs v. Board of Education, 59 N.J. 506, 284 A.2d 179 (1971), but that hearsay testimony from school employees is apparently treated differently, and admitting this type of hearsay does not deprive a student of due process. See Tasby v. Estes, 643 F.2d 1103 (5th Cir.1981); Boykins v. Fairfield Board of Education, 492 F.2d 697 (5th Cir.1974), cert. denied, 420 U.S. 962, 95 S.Ct 1350, 43 L.Ed.2d 438 (1975); Racine Unified School District v. Thompson, 107 Wis.2d 657, 321 N.W.2d 334 (Ct.App. 1982), compare Franklin v. District School Board, 356 So.2d 931 (Fla.Ct.App. 1978) (hearsay testimony alone insufficient by statute).
In summary, we note that the Board of Trustees of the Pascagoula Municipal Separate School District might not have denied Regina Jones due process in this case, but surely it granted the barest minimum and no more. Especially where charges of misconduct are denied and proof is based solely on testimony of other students, school boards should be especially sensitive to rights of students to know the complete nature of the charges. Though confrontation may not be an absolute necessity  or even advisable  in every case, written statements should ordinarily be provided. Especially where there are multiple allegations, findings of fact should be made. School boards should take note that though courts should not become involved in running schools, expulsion and suspension are severe sanctions requiring solemn attention to a pupil's rights. However, based upon this record we find sufficient evidence to support the expulsion and, therefore, the judgment of the Chancery Court of Jackson County, Mississippi, dated the 20th day of May, 1986, upholding the expulsion of Regina Jones from the Pascagoula Municipal Separate School District for the remainder of the 1985-86 school year, is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.